1  RAJ V. ABHYANKER, California SBN 233284
   Email: raj@legalforcelaw.com
2  WENSHENG MA, California SBN 299961
3  Email: vincent@legalforcelaw.com

4  LEGALFORCE RAPC WORLDWIDE, P.C.
   1580 W. El Camino Real, Suite 10
5  Mountain View, CA 94040
   Telephone:    (650) 965-8731
6  Facsimile:    (650) 989-2131

7
8  Plaintiff Raj Abhyanker

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14  RAJ ABHYANKER,                          Case No.: 3:21-cv-1534

15          Plaintiff,                       **COMPLAINT FOR**

16
       v.                                    **(A) DECLARATORY JUDGMENT ON
17                                               INVALIDITY OF U.S. PATENT NOS.
   NEXTDOOR, INC., and NIRAV TOLIA;             10,078,431;
18                                               9,940,008;
19          Defendants.                          10,534,521;
                                                 10,157,412;
20                                               10,129,345; and
                                                 10,122,671**
21

22                                           **(B) BREACH OF CONTRACT;**

23                                           **(C) INTENTIONAL INTERFERENCE
24                                               WITH PROSPECTIVE ECONOMIC
                                                 RELATIONS; and**
25
                                             **(D) UNJUST ENRICHMENT**
26

27                                           **DEMAND FOR JURY TRIAL**

28

1

2

3        1.      Plaintiff Raj Abhyanker ("Abhyanker" or "Plaintiff"), for its Complaint against

4   defendants Nextdoor, Inc. ("Nextdoor") and Nirav Tolia ("Tolia") (hereinafter collectively

5   referred to as "Defendants"), who are and have been acting in concert with unnamed defendant

6   Prakash Janikiraman ("Janikiraman"), states and alleges as follows for declaratory judgment of

7   invalidity of the six captioned patents U.S. Pat. Nos. 10,078,431; 9,940,008; 10,534,521;

8   10,157,412; 10,129,345; and 10,122,671 as well as unjust enrichment.

9                                        **SUMMARY**

10       2.      In 2011, weeks after Nextdoor.com's public launch, an allegation was made that

11  Nextdoor had illegally stolen the Nextdoor concept from Abhyanker through Tolia, an

12  entrepreneur in residence at Benchmark Capital where Abhyanker pitched his neighborhood

13  social networking startup in the summer of 2007.

14       3.      Abhyanker was the CEO and founder of the predecessor to Nextdoor,

15  Fatdoor.com, a venture backed neighborhood social network and Techcrunch 20 finalist in 2007

16  that was seeking to acquire the Nextdoor.com domain. Abhyanker raised approximately $6.5

17  million in seed, Series A, and Series B rounds of funding from Silicon Valley investors for his

18  startup between 2006 and 2007 - including from the CEO of Intuit and PayPal, the Prime

19  Minister of Italy, and two tenured Stanford computer science professors including an inventor of

20  Google's Page Rank algorithm and a former Chairman of the Stanford University Computer

21  Science department and faculty advisor to Sergey Brin the founder of Google.[1] Tolia was a CEO

22  candidate to replace Abhyanker's position as the CEO in 2007 but was not selected.

23       4.      Tolia later became the CEO of Nextdoor in 2010 when his business Fanbase, a

24  sports fan website, failed. Nextdoor settled with Abhyanker in December 2014, days before a

25  federal trial.

26

27  ──────────────
    [1] The CEO of Intuit and PayPal ("Bill Harris"), the Prime Minister of Italy (Silvio Berlusconi's
28  fund Keynote Partners), an inventor of Google's Page Rank algorithm ("Dr. Rajeev Motwani"), a
    former Chairman of the Stanford University Computer Science department and faculty advisor to
    Sergey Brin "Dr. Héctor García-Molina") all invested in Abhyanker's startup.

5.      In November 2020, after news emerged that Nextdoor was planning an IPO through a direct listing or special purpose acquisition company (SPAC) process, Abhyanker discovered that Nextdoor had surreptitiously rewritten Abhyanker's patent applications by omitting him as the inventor and listing Tolia as the lead inventor. When Abhyanker asked Nextdoor to voluntarily take corrective action, Nextdoor retaliated by threatening stipulated penalties of $1.5 million if Abhyanker reported its misconduct to the USPTO.

6.      On March 2, 2021, Nextdoor materially breached the Settlement Agreement by including substantial confidential information and key terms under the Settlement Agreement ECF No. 480-5, Exhibit D, in case Case No. 3:12-cv-05667-EMC without redaction.

## ABHYANKER'S AFFILIATION WITH NEXTDOOR

7.      Abhyanker created a "NextDoor.com Specification Draft 1" for a neighborhood social network to be called Nextdoor.com in 2006, and provided this draft to investors. Abhyanker built a minimally viable software prototype for his neighborhood social network and successfully deployed it in a number of neighborhoods across the Bay Area. Abhyanker originally created a version of the "house" logo to be used for Nextdoor in 2006. Forensically preserved evidence shows that Abhyanker created a cap-table showing equity distribution in a business to be called NextDoor, Inc. while allocating himself 30% founder shares in 2006, and while allocating co-founder shares to his business partner Sandeep Sood ("Sood") and employees such as a "guy with Google Maps experience." Abhyanker was the lead inventor on more than 40 patent applications between 2006 and 2007, some of which referred to the name "nextdoor.com" as the name of his neighborhood social network. Abhyanker picked the Fatdoor name only when he could not secure the Nextdoor.com domain after numerous bids.

8.      Abhyanker pitched his Nextdoor / Fatdoor concept in June of 2007 to venture capitalist Benchmark Capital as part of a Series B round of fundraising. Tolia was at that time an entrepreneur-in-residence employee of Benchmark whose job it was to assist the venture fund in the evaluation of startups. Forensically preserved evidence shows that Benchmark headhunter Jon Love considered Tolia to be the chief executive officer of Abhyanker's startup in August 2007. However Tolia was not chosen, and a different chief executive officer, Jennifer

1   Dulski ("Dulski") was selected by investors to replace Abhyanker based on a positive reference

2   by Tolia. After two pivots and name changes, Dulski drove Abhyanker's startup to failure by

3   2011 when Abhyanker's inventions covered through patent filings were sold to a non-practicing

4   entity in Texas and the balance to Google, Inc.

5           9.      In the meanwhile, Tolia left Benchmark in 2008 to launch a sports website called

6   Fanbase with initial funding from Benchmark with a woman named Sarah Leary ("Leary") and

7   Prakash Janikiraman, who is a college friend of Sood and was an engineer on the Google Maps

8   team in 2006. Upon information and belief, Janikiraman was the person with Google Maps

9   experience to work on Abhyanker's version of Nextdoor. However, when asked in 2012 about

10  this, Sood claimed to Abhyanker that he deleted all his conversations with Janikiraman and

11  could no longer remember. Fanbase failed by early Spring 2010 and laid off most of its staff.

12  Before returning remaining funds to Benchmark, Tolia and his business partners Leary and

13  Janikiraman, decided to try one last effort to save Fanbase from failure by launching a

14  neighborhood social network. Fanbase relaunched the neighborhood social network in the

15  summer of 2010 in the exact same neighborhood where Abhyanker's office was located three

16  years earlier in 2007.  Fanbase selected this neighborhood despite all of its employees at the

17  time living and working more than 20 miles away.  Within 2 weeks, their testing was successful,

18  saving Fanbase from closure.  Fanbase then rebranded as Nextdoor.com, and secured the

19  domain Nextdoor.com through a secret intermediary, Josh Becker, for approximately $55,000.

20          10.     In October 2011, Nextdoor officially opened to the public. The day after its

21  launch, Abhyanker contacted Tolia congratulating him and asking if he could help build the

22  company since he started a similar concept years before. Tolia ignored Abhyanker. Abhyanker

23  commenced litigation against Nextdoor in 2011. Nextdoor moved the dispute to federal court,

24  and countersued Abhyanker when Abhyanker bought the Nextdoor.cm domain to demonstrate

25  that he had not abandoned his Nextdoor trademark rights. Abhyanker was able to secure his

26  patent rights back in certain ones of his inventions through the Texas non-practicing entity in

27  2013 that Dulski had sold off in 2010. After being sued for patent infringement by Abhyanker

28  in May 2014, Nextdoor bought a quitclaim to Abhyanker's inventions from the Texas

1    non-practicing entity for $300,000 and fraudulently claimed it was now a co-owner of

2    Abhyanker's inventions.

3        11.    The parties confidentially settled on December 2, 2014, while Abhyanker's patent

4    litigation against Nextdoor and Abhyanker's cancelation proceeding to the NEXTDOOR

5    trademark was in discovery stage of litigation on the basis of fraud before the United States

6    Patent and Trademark Office's trials and appeals board. As part of the settlement, Nextdoor

7    agreed to secretly license Abhyanker's inventions and maintain confidentiality. Nextdoor

8    negotiated a "non-marking" agreement so that they could hide their founding story from its

9    users, investors, and the public. In exchange, Abhyanker agreed to never state his prior

10   affiliation with Nextdoor if Nextdoor agreed to hold the settlement agreement's onerous terms

11   to Abhyanker strictly confidential.

12       12.    On March 2, 2021 Nextdoor materially breached its settlement agreement with

13   Abhyanker, giving rise to the instant Complaint and disclosure of these facts.

14   **KEY DIFFERENTIATORS OF NEXTDOOR INVENTED BY ABHYANKER**

15       13.    A plain reading of the Abhyanker patent filings themselves provide independent

16   corroborating evidence that key differentiators of Nextdoor derive directly from Abhyanker's

17   prior work in 2006-2007.

18       14.    For example, Abhyanker conceived of the idea to send postcard mailers to homes

19   of neighbors to verify users in 2006.[2]

---

25   [2] "The method may further include mailing a double-postcard (e.g., the double-postcard may
26   qualify as a first-class mail postcard having an embedded reply information in the
     double-postcard) that may be folded and sealed to an address associated with the proprietary
27   profile which assigns an ownership of the proprietary profile to a user who applies a code
     provided in the double-postcard to the proprietary profile.", App., 11/717,807, titled "DISPUTE
28   RESOLUTION IN A GEO-SPATIAL ENVIRONMENT" filed March 13, 2007 listing
     Abhyanker as an inventor with William Harris (former CEO of Paypal/Intuit), and
     Chandrasekhar Thota.



15.     Abhyanker invented the idea to draw neighborhood boundaries for new neighborhoods when a founding member joins in 2007.[3]



FIGURE 3

---

[3] "The selection tools 206 may enable the representative to draw the community boundary selection 208 corresponding to the community 104 on the geo-spatial map 200. For example, the community boundary selection 208 may be a polygon drawn around a target region using the selection tools 206. The selection tools 206 may include, but are not limited to, a rectangle tool, a lasso tool, a polygon tool, a line tool, an elliptical tool, and/or other tools for selecting the region. In addition, the community 104 may be created by making use of the entries obtained from the target region corresponding to the community boundary selection 208." App., 11/897,689, titled "COMMUNITY BOUNDARIES IN A GEO-SPATIAL ENVIRONMENT" filed August 30, 2007 with Abhyanker as the sole inventor.

16.    Abhyanker invented the concept to elect neighborhood leads by tracking activity level on the social network in 2007.[4] All three concepts differentiate Nextdoor uniquely from other social networks like Facebook.

## NEXTDOOR'S FACTUAL ADMISSIONS

17.    In October 2006, Abhyanker conceived of an idea for a neighborhood social network. (*Nextdoor's Proposed Finding of Fact and Conclusions of Law*, dated November 4, 2014, ¶ 38, in case No. 3:12-cv-05667-EMC). Abhyanker pursued the mark NEXTDOOR to identify the neighborhood social network in 2006. *Id.* at ¶ 39. Abhyanker attempted to purchase the domain www.nextdoor.com on October 21, 2006. *Id.* at ¶ 40. On October 24, 2006 Abhyanker learned that the domain www.nextdoor.com was not available to purchase. *Id.* at ¶ 41 When Abhyanker was unable to acquire the www.nextdoor.com domain, he revised his plan to use the name "nextdoor" in connection with his business concept for a neighborhood-based social network, and opted to instead use the name "Fatdoor" for it. *Id.* at ¶ 42.

18.    On October 23, 2006, Abhyanker purchased domains "nextlawn.com" and "nextyard.com" in his personal name. *Id.* at ¶ 46. Abhyanker included the URL www.nextdoor.com in a patent application he filed on November 22, 2006 (U.S. Pat. App. No. 11/603,442 para [0236]) *Id.* at ¶ 56, *highlighted*. Nextdoor.com did not believe that patents can confer trademark or domain name rights, and believed that they were irrelevant in the instant litigation. Nonetheless, Nextdoor.com included the suggested findings making it clear their knowledge and material relevance of Abhyanker's prior art. *Id.* at *footnote 1*.

19.    In the course of seeking VC funding, Abhyanker also provided an October 21, 2006 specification he had written for Nextdoor to his funders as proof of the "Fatdoor (formerly Nextdoor) conception." *Id.* at ¶ 61.

---

[4] "The member management module may further be configured to determine an activity level of each of the members in the member repository. The representative may be determined based on the activity level. The community network may include a representative interface accessible by the representative including a neighborhood management module configured to provide a neighborhood management option to the representative" App., 11/897,689, titled "COMMUNITY BOUNDARIES IN A GEO-SPATIAL ENVIRONMENT" filed August 30, 2007 with Abhyanker as the sole inventor.

20.     About four years later, on October 26, 2011, Nextdoor.com publicly launched its website www.nextdoor.com. *Id.* at ¶ 3. The morning after launch day, October 27, 2011, Defendant Abhyanker sent an unsolicited email to Nextdoor.com's CEO, Nirav Tolia, congratulating him on the successful launch of www.nextdoor.com and stating that he had pursued a similar business concept under the name Fatdoor. *Id.* at ¶ 4.

21.     Nextdoor's then chief executive officer Tolia meet with Abhyanker on September 28, 2012 in a public setting at a Panera Bread in downtown San Francisco near 4th Street and King street. (*Declaration of Raj Abhyanker*, dated January 24, 2014, ¶ 52, Ex. 6, further Ex. K in case No. 3:12-cv-05667-EMC) During the meeting, Tolia and Abhyanker discussed Abhyanker's inventions, and Abhyanker provided insight into numerous inventive ideas that Abhyanker had with respect to extending features of Abhyanker's Nextdoor concept to nearby neighborhoods and municipalities. Tolia and Abhyanker met for numerous hours, and a portion of the meeting was audio recorded by Abhyanker. The recorded portion is the concluding portion, with recording time of 1 hour and 58 minutes. *Id.* at ¶ 56. Nextdoor initially alleged that the recording was surreptitiously recorded, but did not actively pursue that argument during the instant litigation after the transcript was offered as an exhibit as Dkt. 150-1. *Id.* at Ex. K, in case No. 3:12-cv-05667-EMC.

22.     Tolia acknowledged on the audio recording that his attorneys would "probably say don't tell him anything" but he is giving Abhyanker a "full disclosure" so that Abhyanker can take the recording and "do with it what you will". *Id.* at ¶ 55. During the conversation, Abhyanker and Tolia conceived of numerous inventive ideas that Nextdoor would later seek to protect through patent protection. Specifically, Tolia and Abhyanker discussed ideas related to nearby neighborhoods. On the portion that is audio recorded, Abhyanker is heard framing the problem needing to be solved as "Then beyond that, scaling from one neighborhood to another. You may be highly engaged in this neighborhood but the one next door to it is not." *Id.* at Ex. K, pg. 26. Tolia responds with respect to nearby neighborhoods, "Groups that have their own distinct memberships that are sometimes within a neighborhood, sometimes across neighborhoods - that's a key way of growing this thing as well. Being able to communicate with

people may be outside your neighborhood. There's something there that we're testing right now." *Id.* at Ex. K, pg. 27.

23.     In addition, Abhyanker described ideas on how to get municipalities involved "[S]o how do you move from one to other and getting the specific governments involved, the specific clubs involved" *Id.* Only after the mutual exchange of ideas does Tolia comment "you have a lot of great ideas. I don't want you to tell me anymore of them, given that we've thought about a garage as well but now for me to say that you can say you gave me the idea et cetera - not that you would. But just from an appropriateness standpoint I don't want you to share stuff with me that you feel is yours that I may or may not have, because that's sort of why we're in this situation, right?" *Id.* Ex. K, pg. 27. Later, Tolia comments to Abhyanker " I would enjoy working with you" and "I think in addition to that you've thought about this a lot. You don't know everything I know for sure because now I've thought about it a lot as well, right? *Id.* Ex. K, pg. 34. I'm probably more current on this stuff than you are. [Patch] is now doing a new version of their website that's basically Nextdoor - or Fatdoor or whatever you want to call it." *Id.* Ex. K, pg. 35.

24.     Tolia goes on by saying "so let's assume for a second that what we're having a discussion about now is how can we work together" *Id.* Ex. K, pg. 36 and "Well, let's talk about the path of getting you involved" *Id.* and "if I think to myself okay, tomorrow you're now a member of the team - whatever that means - whether it's fulltime, part-time or a board member - board adviser - whatever. It can be any of those things. What would it take to get there?" *Id.* Ex. K, pg. 37. Tolia went on to say "can we work together on creating a reality for the vision that we share" *Id.* Ex. K, pg. 49. And, " the potential upside of us working together is starting to become something" *Id.* Ex. K, pg. 61. Further, "So look, I think we're completely aligned. We could spend 10 more hours on that and we wouldn't be any more aligned because we're already at a local maximum on that. It's really just a question of can we get a line on this other stuff." *Id.* Ex. K, pg. 64. Tolia further said "I'm really sorry that a concept that you pioneered - probably you weren't even the pioneer. There was probably other people who thought about it as well. But I'm really sorry that a person who worked as hard on this as you that the chips fell

1    in such a way that you didn't get to pursue it." *Id.* Ex. K, pg. 68.

2        25.    Among additional admissions on inventorship by Tolia include that they gained

3    significant economic value by prototyping Nextdoor in the Lorelei neighborhood next to

4    Abhyanker's offices in 2007 because their previous efforts for Fanbase was a "failed company"

5    by April 2010, and they were planning on giving remaining money raised from Benchmark

6    back to them, had to lay off their employees from 12 people to 7 people, and needed a pivot that

7    will save the company from collapse. *Id.* Ex. K, pg. 2. Further, Tolia volunteered that they only

8    had until the "end of the summer and if we can't come up with anything through the end of the

9    summer we're going to shut the company down and at that point you're not going to get any

10   severance." *Id.* Ex. K, pg. 3.

11       26.    Tolia admitted in the audio file that Nextdoor took a "little bit more of a MBA"

12   approach, rather than "in Silicon Valley it's like I've got this awesome idea". *Id.* Ex. K, pg. 4

13   Tolia continued to admits that Nextdoor's goal was "make sure that before we pull the ripcord

14   that we really think there's something on the other side of this rainbow." *Id.* Ex. K, pg. 5 Tolia

15   admitted that his cofounder Prakash Janikiraman as the person who came up with the Nextdoor

16   name, who knew a "HOA president" in the Lorelei neighborhood, and selected the Lorelei

17   neighborhood next to Abhyanker's offices as the first neighborhood, despite none of the

18   "founding team" of Fanbase that pivoted to Nextdoor having any prior direct association with

19   that first neighborhood, and living about thirty miles away. *Id.* Ex. K, pg. 8 Tolia admitted that

20   the Lorelei beta test was successful in just two weeks. *Id.* Ex. K, pg. 12.

21       27.    In addition, Tolia changed his story a number of times with respect to when he

22   first heard of "Fatdoor" during the meeting. First, Tolia said he heard of the concept when

23   Abhyanker first emailed him the morning after their launch on October 26, 2011. *Id.* Ex. K, pg.

24   1 Later, Tolia confessed that he heard of Fatdoor and Abhyanker's inventions when researching

25   press contacts prior to the launch of Nextdoor.com. *Id.* Ex. K, pg. 10.

26       28.    Changing his story again, Tolia admitted that someone Abhyanker knew that

27   worked with Abhyanker early on was a friend of his cofounder Janikiraman and filled out a

28   survey prior to the launch of Nextdoor. *Id.* Ex. K, pg. 10 Tolia admitted that an entrepreneur like

Abhyanker should go in and just expect a venture capitalist to take intellectual property from others and that it has happened so many times in the past. *Id.* Ex. K, pg. 58.

29.     Tolia admitted that he knew the replacement CEO to Abhyanker in 2007, Jennifer Dulski since she worked at Yahoo, Inc., and exchanged communications with her through Facebook, including an email discussing Abhyanker's inquiry to Tolia the day after the Nextdoor.com website launched on October 26, 2011. *Id.* Ex. K, pg. 1 Tolia offered that the pro-generators of his neighborhood social networking implementation by Nextdoor were his "co-founders" Madison Bell and Adam Varro. *Id.* Ex. K, pg. 5.

30.     On December 2, 2014, Abhyanker licensed certain enumerated patents to Nextdoor through a Patent License Agreement along with the settlement of this litigation. The Patent License Agreement included 6 issued patents, 5 allowed patents and 53 pending applications on which Abhyanker listed as the inventor.

## THE LORELEI NEIGHBORHOOD

31.     Abhyanker located his office in 2006 at 4400 Bohannon Drive #100 in the Lorelei neighborhood of Menlo Park, California. Abhyanker sent invitations for users including neighbors living in and around the Lorelei neighborhood for focus groups in the Lorelei neighborhood in 2007. That year, Abhyanker extensively walked the neighborhood around his office, personally knocking on hundreds of doors trying to get them activated on his neighborhood social network and stimulate interaction between neighbors. Abhyanker met with neighborhood residents as well as community leaders around his office to encourage them to use his neighborhood social network. Abhyanker commissioned large scale usability studies in the Lorelei neighborhood in 2007, and his startup even rented a larger testing lab space on Marsh Road in the Lorelei neighborhood that same year. Some of these usability studies in the Lorelei neighborhood included graphic facilitators, which created documents from feedback from neighbors around the Lorelei neighborhood, such as the forensically preserved exhibits:







32.     Three years later, Fanbase relaunched a neighborhood social network in the Lorelei neighborhood. The relaunching in the Lorelei neighborhood was successful in just two weeks, saving the business Fanbase business from collapse in the summer of 2010. At the time Fanbase was located in San Francisco, more than 20 miles to the north of Menlo Park California. Tolia, Leary, Janikiraman, and the other co-founders at Fanbase lacked any direct connection to the Lorelei neighborhood or Menlo Park. Most lived in San Francisco. The only connection that Nextdoor had to the Lorelei neighborhood was through an individual named Salim Shaikh ("Shaikh") who was a common friend of Janikiraman and Sood, who was Abhyanker's former business partner for Nextdoor in 2006.

33.     Struggling to save Fanbase from failure, Janikiraman suggested to Tolia that they attempt a neighborhood social networking concept in the Lorelei neighborhood in the summer of 2010, and if that fails, return the remaining capital to their investor Benchmark. In just two weeks, the testing in Lorelei was successful, saving their Fanbase business from collapse. Janikiraman failed to disclose to Tolia or other co-founders that Abhyanker had been the originator of these concepts. Instead, Janikiraman merely told Tolia that his friend Sood had

worked with Abhyanker in the past on neighborhood social networking but Abhyanker was let go as the CEO by venture capitalists. Janikiraman suggested to Tolia that his friendship with Shaikh was the reason for first testing in Lorelei. Tolia and Janikiraman then misrepresented the selection of the Lorelei neighborhood, the key differentiators of Nextdoor (postcard mailers, verified identity, neighborhood leads, neighborhood boundaries) as either his creation or the work of a collective group of Fanbase employees to Benchmark and other investors.

34.     After settling with Abhyanker December 2014, Nextdoor closed a $110 million round of venture funding in early 2015. Around the same time, Janikiraman and Tolia began working hard to erase Abhyanker from the history of Nextdoor. This included hosting Nextdoor parties in the Lorelei neighborhood, giving away Nextdoor items, ice cream to residents, and erecting a monument in the Lorelei neighborhood as the first neighborhood on Nextdoor, while inviting the press and omitting any reference to Abhyanker in developing the neighborhood as a prime testing ground for neighborhood social networks.




Nirav Tolia, Nextdoor's chief, in the Lorelei area of Menlo Park, Calif., the start-up's first test community. Jason Henry for The New York Times





2 of 13
Nextdoor CEO Nirav Tolia arrives in an ice cream truck during the Nextdoor celebration in the Lorelei neighborhood that was the testing ground for its service in Menlo Park, Calif., on Saturday, May 20, 2017. (LiPo Ching/Bay Area News Group)

11 of 13
Nextdoor founding members from the Lorelei community, from left, Salim Shaikh and Heather Nelson talk about the neighborhood as Nextdoor co-founder Sarah Leary listens during a Nextdoor celebration in the neighborhood that was the testing ground for it's service in Menlo Park, Calif., on Saturday, May 20, 2017. (LiPo Ching/Bay Area News Group)

35.     Tolia also began working with his patent lawyers to fraudulently rewrite Abhyanker's patents into new patent applications, while concealing their disclosure to the USPTO. Between 2014 and 2020, Nextdoor secured six issued U.S. patents.

## NATURE OF THE ACTION

36.     Each of Nextdoor's patents, except for one, was filed after the Settlement Agreement was reached between the parties on December 2, 2014. The patent applications have now issued as the following patents:

- the '431 patent (application filed on 5/13/2014, patent issued on 9/18/2018);
- the '345 patent (application filed on 3/10/2015, patent issued on 11/13/2018);
- the '412 patent (application filed on 11/2/2015, patent issued on 12/18/2018);
- the '671 patent (application filed on 11/2/2015, patent issued on 11/6/2018);
- the '008 patent (application filed on 3/31/2016, patent issued on 4/10/2018); and
- the '521 patent (application filed on 9/10/2018, patent issued on 1/14/2020).

37.     During the prosecution of the above patents, Nextdoor and its attorneys should have disclosed to the USPTO the following: (1) factual admissions that Nextdoor made as described above (2) the patent infringement suit that Abhyanker and an affiliated company (Fatdoor) filed against Nextdoor; (3) the patents that Nextdoor licensed from Abhyanker under the Patent License Agreement. Instead, Nextdoor did not disclose any of these things, and fraudulently secured for themselves monopoly rights in an effort to bolster valuation.

## NEXTDOOR'S FRAUDULENTLY SECURED PATENTS

38.     The '431 Patent, titled "SOCIAL NETWORKING BASED ON NEARBY NEIGHBORHOODS," issued on November 18, 2018 from U.S. Patent Application Ser. No. 14/277,005 ("the '005 Application") filed May 13, 2014, and names Nirav N. Tolia, Ryan Patrick Sims, David Michael Wiesen, Sean Christopher Bromage, Rishi Mukhopadhyay, Timothy Garleung Wong, and Michael Philip Balaban as joint inventors. On its face the '431 Patent lists Nextdoor.com, Inc. as the assignee of the '431 Patent.

39.     The '008 Patent, titled "SOCIAL NETWORKING BASED ON NEARBY NEIGHBORHOODS," issued on April 10, 2018 from U.S. Patent Application Ser. No.

1    15/087,879 ("the '879 Application") filed March 31, 2016, and names Nirav N. Tolia, Ryan

2    Patrick Sims, David Michael Wiesen, Sean Christopher Bromage, Rishi Mukhopadhyay,

3    Timothy Garleung Wong, Michael Philip Balaban, and Madison Nixon Bell as joint inventors.

4    On its face the '008 Patent lists Nextdoor.com, Inc. as the assignee of the '008 Patent.

5         40.    The '521 Patent, titled "SOCIAL NETWORKING BASED ON NEARBY

6    NEIGHBORHOODS," issued on January 14, 2020 from U.S. Patent Application Ser. No.

7    16/126,163 ("the '163 Application") filed September 10, 2018, and names Nirav N. Tolia, Ryan

8    Patrick Sims, David Michael Wiesen, Sean Christopher Bromage, Rishi Mukhopadhyay,

9    Timothy Garleung Wong, Michael Philip Balaban, and Madison Nixon Bell as joint inventors.

10   On its face the '521 Patent lists Nextdoor.com, Inc. as the assignee of the '521 Patent.

11        41.    The '412 Patent, titled "GENERATING AND DISPLAYING

12   RECOMMENDATION COUNTERS BASED ON RECOMMENDATION DIALOGUE

13   CAPTURED THROUGH A SOCIAL NETWORK AND CONSTRAINED BY GEOGRAPHIC

14   REGIONS OF THE RECOMMENDERS," issued on December 18, 2018 from U.S. Patent

15   Application Ser. No. 14/930,469 ("the '469 Application") filed November 2, 2015, and names

16   Nirav N. Tolia, Aaron Webber, Rishi Mukhopadhyay, Sean Bromage, Kevin Liu, Paul Howe,

17   Ryan Sims, Daniel J. Clancy, Morgan Hallmon, and Daniel Masquelier as joint inventors. On its

18   face the '412 Patent lists Nextdoor.com, Inc. as the assignee of the '412 Patent.

19        42.    The '345 Patent, titled "PROVIDING CONTENT TO A GEOGRAPHICALLY

20   CONSTRAINED SET OF RECIPIENTS," issued on November 13, 2018 from U.S. Patent

21   Application Ser. No. 14/644,112 ("the '112 Application") filed March 10, 2015, and names

22   David Wiesen ("Wiesen"), Rishi Mukhopadhyay, Ryan Sims, Paul Howe, and Morgan Hallmon

23   as joint inventors. On its face the '345 Patent lists Nextdoor.com, Inc. as the assignee of the

24   '345 Patent.

25        43.    The '671 Patent, titled "IDENTIFYING SERVICE PROVIDERS FOR

26   ELECTRONICALLY RECEIVED SERVICE REQUESTS AND USING STORED ACCOUNT

27   DATA TO CONNECT THE REQUESTER WITH PROVIDERS," issued on November 6, 2018

28   from U.S. Patent Application Ser. No. 14/930,264 ("the '264 Application") filed November 2,

2015, and names Nirav N. Tolia, Thomas Donahoe, Thomas F. Kaehler, Gregory James, Clifton Ray Williams, and Daniel J. Clancy as joint inventors. On its face the '671 Patent lists Nextdoor.com, Inc. as the assignee of the '671 Patent.

44.     Abhyanker requests that the Court order the Commissioner for Patents of the United States Patent and Trademark Office ("USPTO") to invalidate the '431 Patent, the '008 Patent, the '521 Patent, the '412 Patent, the '345 Patent, and the the '671 Patent.

## THE PARTIES

45.     Plaintiff Abhyanker is an engineer, inventor, and lawyer residing in Santa Clara County. Abhyanker is the inventor and founder of the Nextdoor neighborhood social network.

46.     Defendant Nextdoor is a Delaware corporation with the agent for service of process as Corporation Service Company doing business in Delaware as Paracorp Incorporated, 2140 S. Dupont Highway, Camden Delaware, 19934 and maintaining its principal place of business at 420 Taylor St, San Francisco, CA 94102. Nextdoor, provides and operates the neighborhood social network service www.nextdoor.com. The original corporate name for Nextdoor was Fanbase, Inc. which operated a sports fan website in 2008, which failed. The company rebranded to Nextdoor in 2010.

47.     Defendant Tolia resides in Dallas County, and is the former CEO of Nextdoor, Inc., and serves on the company's board of directors. Tolia is a person who had been a candidate for Abhyanker's CEO role after Series B funding of Nextdoor / Fatdoor but was not picked because of "ethical issues at Shopping.com (well publicized)." Tolia was also an employee at Benchmark responsible for evaluating startup pitch decks and founding teams when Abhyanker pitched his Nextdoor / Fatdoor concept to Benchmark.

48.     Unnamed defendant Janikiraman resides in San Francisco county, and is the Chief Technology Officer of Nextdoor, Inc. Upon information and belief, Janikiraman was the engineer who was to work on Abhyanker's Nextdoor concept, and disclosed the concept around October 21, 2006 when divulged this information from Abhyanker's business partner and common friend Sood. Janikiraman borrowed the concept of a neighborhood social network, the name "Nextdoor.com", the name "NextDoor, Inc.", and selected the Lorelei neighborhood next

to Abhyanker's office for the initial test of the relaunched Nextdoor.com in 2010 and adopted key features from Abhyanker. Upon information and belief, Janikiram co-opted Abhyanker's Nextdoor concept based on advance knowledge gained from his prior prospective work with Abhyanker and Sood on Nextdoor.[5] Janikiraman was also an employee at Benchmark responsible for evaluating startup pitch decks and founding teams when Abhyanker pitched his Nextdoor / Fatdoor concept to Benchmark.

49.     This is an action arising out of the Patent Act of the United States, 35 U.S.C. §§ 1 et seq., with respect to five U.S. Patent Nos. 10,078,431 ('431 Patent); 9,940,008 ('008 Patent); and 10,534,521 ('521 Patent); 10,157,412 ('412 Patent); and 10,129,345 ('345 Patent). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

50.     Jurisdiction is proper in this Court because this is a court of general jurisdiction and because Plaintiff seeks both damages and equitable relief. This court has supplemental jurisdiction over the cause of action under California Labor Code §3351.5. Venue is proper in this Court because defendants Tolia and Janikiraman reside in San Francisco County.

51.     Nextdoor owns, operates and conducts business in the state of California and directs advertisements at residents of California and throughout the United States including California and this judicial district.

52.     Nextdoor is currently doing business in this judicial district, has purposefully availed itself of the privilege of conducting business with residents of this judicial district, and has purposefully reached out to residents of this judicial district.

53.     Nextdoor has established sufficient minimum contacts with the State of California

---

[5] In a forensically preserved email on October 21, 2006, Sood admits "I asked a few close friends for their feedback." One of the close friends that Sood likely asked for feedback was Janikiraman. Sood also says "I already have a guy with Google Maps experience (which could also hopefully translate into the Zillow.com app you are looking at as well)." The person that Sood wanted to employ with Google Maps experience was also likely Janikiraman based on the scarcity in 2006 of individuals with geo-spatial web mapping skills given the newness of the technology in 2006, and given Janikiraman's Linkedin profile showing that Janikiraman was working at Google in the Google Maps business unit in 2006 , and because Sood had divulged Janikiraman was "an old friend from college" at U.C. Berkeley in an email to Abhyanker on December 2, 2012.

1     such that it should reasonably and fairly anticipate being compelled into court in California.

2          54.    Venue in this judicial district is proper under 28 U.S.C. §1400(b).

3          55.    This Court has personal jurisdiction over Nextdoor because (a) because for the

4     purposes of personal jurisdiction and venue a substantial part of the events or omissions giving

5     rise to the claims occurred in this judicial district pursuant to 28 U.S.C. §1391(b) and because

6     Nextdoor is subject to personal jurisdiction in this judicial district.

7                                        **COUNT I**

8          **Invalidity of the U.S. Patent 10,078,431 Pursuant to 35 U.S.C. §102, §103 and §282**

9          56.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs of

10    this complaint as if fully set forth herein.

11         57.    Abhyanker can demonstrate that '431 Patent is invalid because every enabling

12    limitation of the granted claims of the Nextdoor '431 Patent is either patentably equivalent to a

13    claim of the Abhyanker '545 Patent or is based on disclosure from its specification as

14    demonstrated in the detailed claim chart of Ex. 1 mapping the claims of the '431 Patent to the

15    claims and specification of the Abhyanker '545 Patent.

16         58.    The '545 Patent, titled "MAP BASED NEIGHBORHOOD SEARCH AND

17    COMMUNITY CONTRIBUTION," issued on May 27, 2014 from U.S. Patent Application Ser.

18    No. 14/144,612 ("the '612 Application") filed December 31, 2013, and names Raj Abhyanker

19    as the sole inventor.

20         59.    The Abhyanker '545 Patent was asserted in the litigation *Fatdoor v.*

21    *Nextdoor.com, Inc.* Case 5:14-cv-02335-BLF on May 20, 2014 ("Fatdoor Litigation"), within

22    days after the filing date of the '005 Application and for months into the pendency of the '005

23    Application.

24         60.    Nextdoor claimed that it acquired putative 50% ownership in the '545 Patent

25    during the Fatdoor Litigation on September 11, 2014 when it wrote to Abhyanker "We wanted,

26    however, to advise you that effective yesterday, Nextdoor.com also has acquired the patent

27    rights of IP Analytics, LLC with respect to the patents-in-suit." In an exhibit, Nextdoor even

28    attached a putative Assignment Agreement signed by "Christa Quarles", a Chief Business

1    Officer of Nextdoor with IP Analytics LLC and GeoTag, Inc. that expressly listed out the '545

2    Patent.

3          61.    The Abhyanker '545 Patent, the Fatdoor Litigation, the putative ownership

4    Nextdoor claimed to acquire in the '545 Patent and other Abhyanker's patents through IP

5    Analytics LLC on September 10, 2014, and the license to the '545 Patent and other Abhyanker

6    inventions on December 2, 2014 from Abhyanker, were never disclosed to the USPTO during

7    the pendency of the '005 Application. These Abhyanker applications, patents, and litigation

8    history are prior art which was material to patentability of the '005 Application, and upon

9    information and belief, were intentionally concealed from the USPTO by Tolia, Nextdoor, or its

10   counsel at Hickman Palermo. Had the USPTO considered these Abhyanker applications,

11   patents, and litigation history, it is likely that the '005 Application would have likely never

12   matured into the '431 Patent or would have significantly narrowed the allowable claims of the

13   '431 Patent.

14         62.    Tolia and its patent prosecution lawyers **were legally and ethically required** to

15   disclose the '545 Patent to the USPTO and the 3:12-cv-05667-EMC litigation when prosecuting

16   the '005 Application. The MPEP provides clearly on its face that the "the existence of such

17   litigation" must be disclosed:

18              Where the subject matter for which a patent is being sought is or
                **has been** involved in litigation, ***the existence of such litigation***
19              and any other material information arising therefrom must be
20              brought to the attention of the U.S. Patent and Trademark Office.

21   MPEP §2001.06(c) (emphasis added).

22         63.    According to MPEP §2001.06(c), the only disclosure question before Tolia and

23   the Nextdoor's patent lawyers when they prosecuted the '005 Application in 2014 was whether

24   the "subject matter" of the '005 Application "is or **has been**" involved in a litigation. If so, "***the***

25   ***existence of such litigation*** … must be brought to the attention of the [USPTO]." *Id.* (emphasis

26   added). The subject matter of the '005 Application, which is "Social Networking Based On

27   Nearby Neighborhoods", had been involved in the instant litigation in 2014. Thus, the mere

28   failure of Tolia and Nextdoor's lawyers to disclose "the existence of such litigation", by itself,

constitutes inequitable conduct rendering the 431 Patent invalid. The same argument is applicable to the other five Nextdoor patents including the '008 Patent, the '521 Patent, the '412 Patent, the '345 Patent, and the '671 Patent.

64.     Moreover, Tolia and the Hickman lawyers also failed to disclose "any other material information arising" from the instant litigation as required by MPEP §2001.06(c), which defines material information to include "evidence of possible prior public use or sales, *questions of inventorship*, *prior art*, allegations of *"fraud,"* "inequitable conduct," and "violation of duty of disclosure." *Id.* (emphasis added) (citation omitted). Here, there is no doubt that "questions of inventorship, prior art, allegations of 'fraud,' [and] 'inequitable conduct'" had arisen from the instant litigation given the facts alleged in the 3:12-cv-05667-EMC litigation.

65.     Nextdoor took the unusual step of requesting that the USPTO not publish '005 Application until it grants. The practice is almost never used for publicly launched inventions as foreign patent rights are forfeited. This was an atypical practice even for Nextdoor, impugning knowledge and intentional withholding of material information by Nextdoor's patent prosecutors.

66.     The only Abhyanker patent references cited were identified by USPTO examiners conducting their own search or examiners at European Patent Office, and deceptively ignored by Nextdoor's patent prosecutors. As a consequence of Nextdoor's unusual non-publication request to the USPTO, Abhyanker was unaware of the '005 Application at the time of the Settlement Agreement and could not know until years later when the patent was granted on September 18, 2018.

67.     Abhyanker acquired all of Nextdoor's putative 50% ownership rights in the '545 Patent and other Abhyanker patents and patent applications as part of an Agreement with Nextdoor on December 2, 2014, and thereby consolidating all ownership rights. As of the filing of this complaint, the full ownership rights of the '545 Patent are with Abhyanker.

68.     At least three of Abhyanker's inventions encapsulated in publications 20070219712 (the US11/653,194 application, or Abhyanker '194 Application), 20090064144

(the 11/897,689 application, or Abhyanker '689 Application) and 20130054317 (the 13/242,303 application, or Abhyanker '303 Application) were used as prior art references for a 103 obviousness rejection in the patent application 13/757,574 (abandoned) on which the '005 Application claimed priority. Despite this, the '689 Application and the '303 Application were never submitted or considered as prior art in the prosecution of the '005 Application.

69.     Raj Abhyanker made independent conceptual contributions to each of the claims of the '431 Patent as demonstrated in the detailed claim chart of Ex. 1.

## COUNT II

### Invalidity of the U.S. Patent 9,940,008 Pursuant to 35 U.S.C. §102, §103 and §282

70.     Plaintiff realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

71.     Abhyanker can demonstrate that '008 Patent is invalid because every enabling limitation of the granted claims of the Nextdoor '008 Patent is either patentably equivalent to a claim of the Abhyanker '545 Patent or is based on disclosure from its specification as demonstrated in the detailed claim chart of Ex. 2 mapping the claims of the '008 Patent to the claims and specification of the Abhyanker '545 Patent.

72.     The '545 Patent, titled "MAP BASED NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION," issued on May 27, 2014 from U.S. Patent Application Ser. No. 14/144,612 ("the '612 Application") filed December 31, 2013, and names Raj Abhyanker as the sole inventor.

73.     The Abhyanker '545 Patent was asserted in the litigation *Fatdoor v. Nextdoor.com, Inc.* Case 5:14-cv-02335-BLF on May 20, 2014 ("Fatdoor Litigation"), nearly two years prior to the filing date of the '879 Application.

74.     Nextdoor claimed that it acquired putative 50% ownership in the '545 Patent during the Fatdoor Litigation on September 11, 2014 when it wrote to Abhyanker "We wanted, however, to advise you that effective yesterday, Nextdoor.com also has acquired the patent rights of IP Analytics, LLC with respect to the patents-in-suit." In an exhibit, Nextdoor even attached a putative Assignment Agreement signed by "Christa Quarles", a Chief Business

1   Officer of Nextdoor with IP Analytics LLC. and GeoTag, Inc. that expressly listed out the '545
2   Patent.

3        75.    The Abhyanker '545 Patent, the Fatdoor Litigation, the putative ownership
4   Nextdoor claimed to acquire in the '545 Patent and other Abhyanker's patents through IP
5   Analytics LLC on September 10, 2014, and the license to the '545 Patent and other Abhyanker
6   inventions on December 2, 2014 from Abhyanker, were never disclosed to the USPTO during
7   the pendency of the '879 Application. These Abhyanker applications, patents, and litigation
8   history are prior art which was material to patentability of the '879 Application, and upon
9   information and belief, were intentionally concealed from the USPTO by Tolia, Nextdoor, or its
10  counsel at Hickman Palermo. Had the USPTO considered these Abhyanker applications,
11  patents, and litigation history, it is likely that the '879 Application would have likely never
12  matured into the '008 Patent or would have significantly narrowed the allowable claims of the
13  '008 Patent.

14       76.    Abhyanker acquired all of Nextdoor's putative 50% ownership rights in the '545
15  Patent and other Abhyanker patents and patent applications as part of an Agreement with
16  Nextdoor on December 2, 2014, and thereby consolidating all ownership rights. As of the filing
17  of this complaint, the full ownership rights of the '545 Patent are with Abhyanker.

18       77.    Raj Abhyanker made independent conceptual contributions to each of the claims
19  of the '008 Patent as demonstrated in the detailed claim chart of Ex. 2.

20  <u>**COUNT III**</u>

21  <u>**Invalidity of the U.S. Patent 10,534,521 Pursuant to 35 U.S.C. §102, §103 and §282**</u>

22       78.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs of
23  this complaint as if fully set forth herein.

24       79.    Abhyanker can demonstrate that '521 Patent is invalid because every enabling
25  limitation of the granted claims of the Nextdoor '521 Patent is either patentably equivalent to a
26  claim of the Abhyanker '545 Patent or is based on disclosure from its specification as
27  demonstrated in the detailed claim chart of Ex. 3 mapping the claims of the '521 Patent to the
28  claims and specification of the Abhyanker '545 Patent.

80.     The '545 Patent, titled "MAP BASED NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION," issued on May 27, 2014 from U.S. Patent Application Ser. No. 14/144,612 ("the '612 Application") filed December 31, 2013, and names Raj Abhyanker as the sole inventor.

81.     The Abhyanker '545 Patent was asserted in the litigation *Fatdoor v. Nextdoor.com, Inc.* Case 5:14-cv-02335-BLF on May 20, 2014 ("Fatdoor Litigation"), nearly four years prior to the filing date of the '163 Application.

82.     Nextdoor claimed that it acquired putative 50% ownership in the '545 Patent during the Fatdoor Litigation on September 11, 2014 when it wrote to Abhyanker "We wanted, however, to advise you that effective yesterday, Nextdoor.com also has acquired the patent rights of IP Analytics, LLC with respect to the patents-in-suit." In an exhibit, Nextdoor even attached a putative Assignment Agreement signed by "Christa Quarles", a Chief Business Officer of Nextdoor with IP Analytics LLC. and GeoTag, Inc. that expressly listed out the '545 Patent.

83.     The Abhyanker '545 Patent, the Fatdoor Litigation, the putative ownership Nextdoor claimed to acquire in the '545 Patent and other Abhyanker's patents through IP Analytics LLC on September 10, 2014, and the license to the '545 Patent and other Abhyanker inventions on December 2, 2014 from Abhyanker, were never disclosed to the USPTO during the pendency of the '163 Application.

84.     Abhyanker acquired all of Nextdoor's putative 50% ownership rights in the '545 Patent and other Abhyanker patents and patent applications as part of an Agreement with Nextdoor on December 2, 2014, and thereby consolidating all ownership rights. As of the filing of this complaint, the full ownership rights of the '545 Patent are with Abhyanker.

85.     At least three of Abhyanker's inventions encapsulated in publications 20070219712 (the US11/653,194 application, or Abhyanker '194 Application), 20090064144 (the 11/897,689 application, or Abhyanker '689 Application) and 20130054317 (the 13/242,303 application, or Abhyanker '303 Application) were used as prior art references for a 103 obviousness rejection in the patent application 13/757,574 (abandoned) on which the '163

Application claimed priority. Despite this, the '689 Application and the '303 Application were never submitted or considered as prior art in the prosecution of the '163 Application. These Abhyanker applications, patents, and litigation history are prior art which was material to patentability of the '689 Application, and upon information and belief, were intentionally concealed from the USPTO by Tolia, Nextdoor, or its counsel at Hickman Palermo. Had the USPTO considered these Abhyanker applications, patents, and litigation history, it is likely that the '689 Application would have likely never matured into the '521 Patent or would have significantly narrowed the allowable claims of the '521 Patent.

86.     Raj Abhyanker made independent conceptual contributions to each of the claims of the '521 Patent as demonstrated in the detailed claim chart of Ex. 3.

## COUNT IV

### Invalidity of the U.S. Patent 10,157,412 Pursuant to 35 U.S.C. §102, §103 and §282

87.     Plaintiff realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

88.     Abhyanker can demonstrate that '412 Patent is invalid because every enabling limitation of the granted claims of the Nextdoor '412 Patent is either patentably equivalent to a claim of the Abhyanker '545 Patent or is based on disclosure from its specification as demonstrated in the detailed claim chart of Ex. 4 mapping the claims of the '412 Patent to the claims and specification of the Abhyanker '545 Patent.

89.     The '328 Patent, titled "GEO-SPATIALLY CONSTRAINED PRIVATE NEIGHBORHOOD SOCIAL NETWORK," issued on July 8, 2014 from U.S. Patent Application Ser. No. 14/203,531 ("the '531 Application") filed March 10, 2014, and names Raj Abhyanker as the sole inventor.

90.     The Abhyanker '328 Patent was asserted in the litigation *Fatdoor v. Nextdoor.com, Inc.* Case 5:14-cv-02335-BLF on May 20, 2014 ("Fatdoor Litigation"), more than one year prior to the filing date of the '469 Application.

91.     Nextdoor claimed that it acquired putative 50% ownership in the '328 Patent during the Fatdoor Litigation on September 11, 2014 when it wrote to Abhyanker "We wanted,

1    however, to advise you that effective yesterday, Nextdoor.com also has acquired the patent

2    rights of IP Analytics, LLC with respect to the patents-in-suit." In an exhibit, Nextdoor even

3    attached a putative Assignment Agreement signed by "Christa Quarles", a Chief Business

4    Officer of Nextdoor with IP Analytics LLC. and GeoTag, Inc. that expressly listed out the '328

5    Patent.

6          92.    The Abhyanker '328 Patent, the Fatdoor Litigation, the putative ownership

7    Nextdoor claimed to acquire in the '328 Patent and other Abhyanker's patents through IP

8    Analytics LLC on September 10, 2014, and the license to the '328 Patent and other Abhyanker

9    inventions on December 2, 2014 from Abhyanker, were never disclosed to the USPTO during

10   the pendency of the '469 Application. These Abhyanker applications, patents, and litigation

11   history are prior art which was material to patentability of the '469 Application, and upon

12   information and belief, were intentionally concealed from the USPTO by Tolia, Nextdoor, or its

13   counsel at Hickman Palermo. Had the USPTO considered these Abhyanker applications,

14   patents, and litigation history, it is likely that the '469 Application would have likely never

15   matured into the '412 Patent or would have significantly narrowed the allowable claims of the

16   '412 Patent.

17         93.    Abhyanker acquired all of Nextdoor's putative 50% ownership rights in the '328

18   Patent and other Abhyanker patents and patent applications as part of an Agreement with

19   Nextdoor on December 2, 2014, and thereby consolidating all ownership rights. As of the filing

20   of this complaint, the full ownership rights of the '328 Patent are with Abhyanker.

21         94.    There were only ten patent references considered prior to the grant of the '412

22   Patent, none of which were submitted by Nextdoor.

23         95.    Raj Abhyanker made independent conceptual contributions to each of the claims

24   of the '412 Patent as demonstrated in the detailed claim chart of Ex. 4.

25                                       **COUNT V**

26   **Invalidity of the U.S. Patent 10,129,345 Pursuant to 35 U.S.C. §102, §103 and §282**

27         96.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs of

28   this complaint as if fully set forth herein.

97.     Abhyanker can demonstrate that '345 Patent is invalid because every enabling limitation of the granted claims of the Nextdoor '345 Patent is either patentably equivalent to a claim of the Abhyanker '545 Patent or is based on disclosure from its specification as demonstrated in the detailed claim chart of Ex. 5 mapping the claims of the '345 Patent to the claims and specification of the Abhyanker '545 Patent.

98.     The '545 Patent, titled "MAP BASED NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION," issued on May 27, 2014 from U.S. Patent Application Ser. No. 14/144,612 ("the '612 Application") filed December 31, 2013, and names Raj Abhyanker as the sole inventor.

99.     The Abhyanker '545 Patent was asserted in the litigation *Fatdoor v. Nextdoor.com, Inc.* Case 5:14-cv-02335-BLF on May 20, 2014 ("Fatdoor Litigation"), over four years prior to the filing date of the '112 Application.

100.    Nextdoor claimed that it acquired putative 50% ownership in the '545 Patent during the Fatdoor Litigation on September 11, 2014 when it wrote to Abhyanker "We wanted, however, to advise you that effective yesterday, Nextdoor.com also has acquired the patent rights of IP Analytics, LLC with respect to the patents-in-suit." In an exhibit, Nextdoor even attached a putative Assignment Agreement signed by "Christa Quarles", a Chief Business Officer of Nextdoor with IP Analytics LLC. and GeoTag, Inc. that expressly listed out the '545 Patent.

101.    The Abhyanker '545 Patent, the Fatdoor Litigation, the putative ownership Nextdoor claimed to acquire in the '545 Patent and other Abhyanker's patents through IP Analytics LLC on September 10, 2014, and the license to the '545 Patent and other Abhyanker inventions on December 2, 2014 from Abhyanker, were never disclosed to the USPTO during the pendency of the '112 Application. These Abhyanker applications, patents, and litigation history are prior art which was material to patentability of the '112 Application, and upon information and belief, were intentionally concealed from the USPTO by Tolia, Nextdoor, or its counsel at Hickman Palermo. Had the USPTO considered these Abhyanker applications, patents, and litigation history, it is likely that the '112 Application would have likely never

matured into the '345 Patent or would have significantly narrowed the allowable claims of the '345 Patent.

102.   Abhyanker acquired all of Nextdoor's putative 50% ownership rights in the '545 Patent and other Abhyanker patents and patent applications as part of an Agreement with Nextdoor on December 2, 2014, and thereby consolidating all ownership rights. As of the filing of this complaint, the full ownership rights of the '545 Patent are with Abhyanker.

103.   Raj Abhyanker made independent conceptual contributions to each of the claims of the '345 Patent as demonstrated in the detailed claim chart of Ex. 5.

## COUNT VI

## Invalidity of the U.S. Patent 10,122,671 Pursuant to 35 U.S.C. §102, §103 and §282

104.   Plaintiff realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

105.   Abhyanker can demonstrate that the '671 Patent is invalid because the claims of the '671 Patent borrow substantially from the claims and/or specification of the Abhyanker U.S. Patent 8,738,545 (the '545 Patent), the Abhyanker U.S. Patent 8,775,328 ('328 Patent), and/or from the Application 14/171,787 ('787 App) as demonstrated in the preliminary claim chart of Ex. 6 mapping the claims of the '671 Patent to the claims and specification of the Abhyanker '545 Patent, '328 Patent, or the '787 App.

106.   The '545 Patent, titled "MAP BASED NEIGHBORHOOD SEARCH AND COMMUNITY CONTRIBUTION," issued on May 27, 2014 from U.S. Patent Application Ser. No. 14/144,612 ("the '612 Application") filed December 31, 2013, and names Raj Abhyanker as the sole inventor.

107.   The Abhyanker '545 Patent was asserted in the litigation *Fatdoor v. Nextdoor.com, Inc.* Case 5:14-cv-02335-BLF on May 20, 2014 ("Fatdoor Litigation"), over four years prior to the filing date of the '112 Application.

108.   The '328 Patent, titled "GEO-SPATIALLY CONSTRAINED PRIVATE NEIGHBORHOOD SOCIAL NETWORK" issued on July 8, 2014 from U.S. Patent Application Ser. No. 14/203,531 ("the '531 Application") filed March 10, 2014, and names Raj

1   Abhyanker as the sole inventor.

2        109.    The '787 App titled "DEMAND AGGREGATION TO ENABLE EFFICIENT

3   NEIGHBORHOOD DELIVERY" was filed on February 4, 2014 from U.S. Patent Application

4   Ser. No. 14/171,787 ("the '787 Application"), and names Raj Abhyanker as the sole inventor.

5        110.    The Abhyanker '545 Patent and the '328 Patent were asserted in the litigation

6   Fatdoor v. Nextdoor.com, Inc. Case 5:14-cv-02335-BLF on May 20, 2014 ("Fatdoor

7   Litigation"), more than one year prior to the filing date of the '264 Application.

8        111.    Nextdoor claimed that it acquired putative 50% ownership in the '545 Patent and

9   the '328 Patent during the Fatdoor Litigation on September 11, 2014 when it wrote to

10  Abhyanker "We wanted, however, to advise you that effective yesterday, Nextdoor.com also has

11  acquired the patent rights of IP Analytics, LLC with respect to the patents-in-suit." In an

12  exhibit, Nextdoor even attached a putative Assignment Agreement signed by "Christa Quarles",

13  a Chief Business Officer of Nextdoor with IP Analytics LLC. and GeoTag, Inc. that expressly

14  listed out the '545 Patent and the '328 Patent.

15       112.    The Abhyanker '545 Patent, the '328 Patent, the '787 App, the Fatdoor Litigation,

16  the putative ownership Nextdoor claimed to acquire in the Abhyanker's patents through IP

17  Analytics LLC on September 10, 2014, and the non-exclusive license to the Abhyanker

18  inventions on December 2, 2014 from Abhyankser, were never disclosed to the USPTO during

19  the pendency of the '264 Application. These Abhyanker applications, patents, and litigation

20  history are prior art which was material to patentability of the '112 Application, and upon

21  information and belief, were intentionally concealed from the USPTO by Tolia, Nextdoor, or its

22  counsel at Hickman Palermo. Had the USPTO considered these Abhyanker applications,

23  patents, and litigation history, it is likely that the '264 Application would have likely never

24  matured into the '671 Patent or would have significantly narrowed the allowable claims of the

25  '671 Patent.

26       113.    Abhyanker acquired all of Nextdoor's putative 50% ownership rights in the '545

27  Patent, the '328 Patent and other Abhyanker patents and patent applications as part of an

28  Agreement with Nextdoor on December 2, 2014, and thereby consolidating all ownership

rights. As of the filing of this complaint, the full ownership rights of the '545 Patent and the '328 Patent are with Abhyanker.

114.    There were only six patent references considered prior to the grant of the '671 Patent, only one of which was submitted by Nextdoor.

115.    Raj Abhyanker made independent conceptual contributions to the inventions claimed in many of the claims 1-22 of the '671 Patent as demonstrated in the detailed claim chart of Ex. 6.

## <u>COUNT VII</u>
## <u>Breach of Contract</u>

116.    On December 2, 2014, Plaintiff entered into a contract with Nextdoor regarding settlement of the litigation in 3:12-cv-05667-EMC;

117.    On March 2, 2021, Nextdoor counsel at Fenwick & West included substantial confidential information and key terms negotiated for confidentiality and restricted from disclosure under the Settlement Agreement ECF No. 480-5, Exhibit D, without redaction;

118.    On March 2, 2021, Abhyanker filed a Notice of Material Breach of Settlement Agreement with this Court as Dkt. 486;

119.    Untold numbers of unauthorized individuals have already accessed the unredacted versions of the filing requested under seal, because reporting services such as PacerPro automatically send PDF versions of the substantial confidential information within minutes of being uploaded to PACER via e-mail to subscribers and key terms negotiated for confidentiality and restricted from disclosure under the Settlement Agreement ECF No. 480-5, Exhibit D to its an untold number of its 36,182 attorneys and law firm users constituting 46% of the AmLaw 100 law firms.  (See: https://www.pacerpro.com/about-us/);

120.    The PacerPro reporting service has permanently archives filings downloaded from PACER and ECF No. 480-5, Exhibit D continues to be available for PDF download in fully unredacted form through PacerPro as of 4:06 P.M. on March 3, 2021; (note: PacerPro writes: " If anyone has downloaded the file, then everyone gets to view it for free." on its website link  If anyone has downloaded the file, then everyone gets to view it for free: https://pacerprohelp. zendesk.com/hc/en-us/articles/215883457-How-and-when-do-I-incur-PACER-charges-

using-PacerPro;

121.    Untold numbers other services such as Law360, DocketAlarm, DocketBird, CourtDrive, RECAP, Lex Machina, Casetext, Justia, and many more have likely already downloaded and made fully accessible Settlement Agreement ECF No. 480-5 in unredacted form;

122.    Active negotiations with Airbnb in *Abhyanker v. Airbnb, Inc.* (3:20-cv-08248-JST) and other companies with which Abhyanker has been negotiating business agreements related to patent licenses and/or employment have been materially and adversely harmed through Nextdoor's conduct, through actions by these third-parties as of the morning of March 3, 2021;

123.    Nextdoor has incurably harmed ongoing third-party negotiations with respect to Abhyanker's inventions, business dealings, and employment prospects irreparably and permanently as a direct result of Nextdoor's material breach;

124.    Nextdoor has incurably harmed Abhyanker's rights by publicly disclosing information and facts that Abhyanker designated as confidential or higher under Section 7 of the Protective Order Dkt. 102 in 3:12-cv-05667-EMC through its material breach;

125.    Abhyanker maintains that since there has been a material breach by Nextdoor that is not mitigatable;

126.    In view of Nextdoor's material breach, Abhyanker has been irreparably harmed because information he contracted as being materially important in terms of the Settlement Agreement were violated by Nextdoor's careless acts; and

127.    As a result of Nextdoor's material breach of contract, Plaintiff is owed compensatory damages for the harm caused by Nextdoor.

## COUNT VIII
### Intentional Interference with Prospective Economic Relations

128.    On November 23, 2020, Plaintiff filed a patent litigation lawsuit against Airbnb, Inc. in Abhyanker v. Airbnb, Inc. in 4:20-cv-08248-JST;

129.    On December 21, 2020, Airbnb filed a Motion to Dismiss for patent eligible subject matter under 35 U.S.C. § 101 arguing among other things, facts related to the Nextdoor

litigation in 3:12-cv-05667-EMC;

130.     When preparing the Opposition to Airbnb's motion to dismiss addressing Airbnb's allegations with respect facts related to Nextdoor, Abhyanker sent an advance copy of its Motion to Dismiss to Fenwick & West, Nextdoor's litigation counsel in 3:12-cv-05667-EMC;

131.     Fenwick & West is also the patent prosecution counsel to Airbnb, Inc.;

132.     Fenwick & West made a number of admissions against interest with respect to Airbnb's arguments challenging Plaintiff's patents on the basis of 35 U.S.C. § 101 in the when Fenwick & West prosecuted the following patent applications on behalf of Airbnb:

   a)   15/589703 titled IDENTITY AND TRUSTWORTHINESS VERIFICATION USING ONLINE AND OFFLINE COMPONENTS, which matured into U.S. Patent 10,193,897 on May 8, 2017.

   b)   14/968750 titled CLASSIFICATION FOR ASYMMETRIC ERROR COSTS, which matured into U.S. Patent 10,360,220 on July 23, 2019.

   c)   16/112460 Application titled LOCATION BASED RANKING OF REAL WORLD LOCATIONS, which matured into U.S. Patent 10,692,159 on June 14, 2020.

   d)   14/968754 titled FEATURE TRANSFORMATION AND MISSING VALUES, which matured into U.S. Patent 10,534,799 on January 14, 2020.

   e)   15/482453 titled REGRESSION-TREE COMPRESSED FEATURE VECTOR MACHINE FOR TIME-EXPIRING INVENTORY UTILIZATION PREDICTION, which matured into U.S. Patent 10,528,909 on January 7, 2020.

   f)   15/728992 titled GRAPHICAL USER INTERFACE FOR DISPLAYING TIPS TO HOSTS PROVIDING TIME EXPIRING LISTINGS IN A RESERVATION SYSTEM, which matured into U.S. Patent 10,628,761 on April 21, 2020.

   g)   15/043710 titled IDENTITY AND TRUSTWORTHINESS VERIFICATION USING ONLINE AND OFFLINE COMPONENTS, which matured into U.S. Patent 9,674,205 on June 6, 2017.

   h)   13/802025 titled AUTOMATED DETERMINATION OF BOOKING

AVAILABILITY FOR USER SOURCED ACCOMMODATIONS, which matured into U.S. Patent 10,467,553 on November 5, 2019.

i)   13/802025   titled   AUTOMATED   DETERMINATION   OF   BOOKING AVAILABILITY FOR USER SOURCED ACCOMMODATIONS, which matured into U.S. Patent 10,467,553 on November 5, 2019.

j)   13/802025   titled   AUTOMATED   DETERMINATION   OF   BOOKING AVAILABILITY FOR USER SOURCED ACCOMMODATIONS, which matured into U.S. Patent 10,467.553 on November 5, 2019.

k)   14/952576 titled DEMAND PREDICTION FOR TIME-EXPIRING INVENTORY, which matured into U.S. Patent 10,664,855 on May 26, 2020.

133.   Likely recognizing this risk and the judicial admissions that Fenwick attorneys may have made during prosecuting Airbnb patent applications against 35 U.S.C. § 101, Nextdoor's litigation counsel Laurence Pulgram ("Pulgram") interfered with Abhyanker's ongoing negotiations with Airbnb's litigation counsel Kathy Vidal at Winston & Strawn LLP on December 30, 2020 at approximately 5:01 PM, during active settlement exploration between Abhyanker and Airbnb, writing "[c]an you please confirm that the Court can resolve your Section 101 motion without resorting to citing Nextdoor confidential information?"

134.   Abhyanker asked Pulgram to preserve all evidence with Airbnb's litigation counsel and inventors that same day, explaining that "[I]t seems wholly inappropriate for Airbnb's patent litigation counsel "Winston") to be communicating with Airbnb's patent prosecution counsel ("Fenwick") and copying me on these emails" and to "Please immediately preserve any and all communications between Airbnb inventors, the USPTO, and its Fenwick counsel for any and all patents prosecuted by Fenwick, including, but not limited to the following Airbnb patent applications which granted into issued patents."

135.   Pulgram refused to preserve evidence arguing that "As you know, Fenwick does not represent AirBnB in the litigation you brought against AirBnB.  You asked for a solution to your purported "need" to introduce Nextdoor's confidential information in the lawsuit you brought against AirBnB.  Nextdoor attempted to propose one.  That's no waiver of anything.

Your instructions are declined." on December 31, 2020 at approximately 10:55 AM.

136.    On January 4, 2021, Plaintiff filed an Opposition to Airbnb's motion to dismiss as Dkt. 23 directly citing the judicial admissions made by Fenwick & West made against the interests of Airbnb when prosecuting the Airbnb patents as rationale for overcoming the 35 USC § 101 rejection;

137.    In addition, as a direct result of Pulgram's refusal to include certain confidential facts from the Nextdoor case beneficial in addressing Airbnb's motion to dismiss, Abhyanker did not include confidential facts in his Opposition to Airbnb's motion to dismiss Dkt. 23 on January 4, 2021, weakening his Opposition even under seal because of Nextdoor's objections under the Settlement Agreement dated December 2, 2014;

138.    On February 22, 2021, Abhyanker and Airbnb advanced settlement discussions when Airbnb's counsel approached Abhyanker and asked to speak to discuss and the parties discussed resolution and settlement options;

139.    On February 23, 2021, discussions between Abhyanker and Airbnb further advanced the items that Abhyanker and Airbnb discussed included sale of the patents that Nextdoor non-exclusively licenses to Nextdoor to Airbnb;

140.    On February 23, 2021, Abhyanker sent to Airbnb diligence documents including all of the patents non-exclusively licensed to Airbnb including bibliographic information on the Abhyanker '545 Patent and the '328 Patent;

141.    On March 2, 2021, Nextdoor counsel at Fenwick & West included substantial confidential information and key terms negotiated for confidentiality and restricted from disclosure under the Settlement Agreement ECF No. 480-5, Exhibit D, without redaction;

142.    The early morning of March 3, 2021, Airbnb approached Abhyanker asking to take the next step in Settlement negotiations conditional upon Abhyanker agreeing to sign a certain restrictive document likely in view of Nextdoor's material breach by publishing confidential terms of March 2, 2021;

143.    Upon information and belief, around shortly midnight of March 2, 2021, Airbnb's counsel at Winston & Strawn received a download of ECF No. 480-5 through PacerPro, as the

law firm Winston & Strawn is a referenced customer of PacerPro; "We did our pilot leading into the holiday season. Some people might think, oh that's not great, but what we wanted to get across is, OK, you're out of the office - you still get that email and document. You don't have to worry," Amber Goodenough Docket Manager & Counsel, Winston & Strawn:

https://www.pacerpro.com/success-stories/case-studies/case-studies-docketing/

144.    As a direct result of Nextdoor's counsel actions, Abhyanker's bargaining position with Airbnb has been materially weakened because Nextdoor's material breach of the settlement agreement by disclosing confidential terms of the settlement agreement on March 2, 2021 into the public record;

145.    Abhyanker believes that since Fenwick & West represents both Nextdoor and Airbnb, and given Fenwick's knowledge of facts related to both Airbnb and Nextdoor, Nextdoor acted in a manner that results in the undermining Abhyanker's patent rights by preventing the sale of the Abhyanker patents by reducing the economic value of the sale of the Abhyanker patents to Airbnb so that Nextdoor can bolster its pre-IPO valuation; and

146.    As a result, Abhyanker has been materially harmed by Nextdoor's Intentional Interference with Prospective Economic Relations with Airbnb, weakening his bargaining power in the active settlement negotiations and reducing potential acquisition value for the Abhyanker patents non-exclusively licensed by Nextdoor.

## COUNT IX
### Unjust Enrichment

147.    Plaintiff realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

148.    Nextdoor knowingly made false omissions to the USPTO as stated herein. Nextdoor made these false omissions with an intent to defraud the USPTO and usurp value from Abhyanker's intellectual property rights.

149.    As a direct and proximate cause of the actions of Nextdoor alleged in this complaint, Plaintiff has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

150.    Plaintiff requests damages on the basis of unjust enrichment in California law

because Nextdoor obtains a benefit that it may not justly retain without consideration because the fraudulent monopoly rights were received at Plaintiff's expense.

### REQUEST FOR RELIEF

151.    WHEREFORE, Plaintiff requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

a)   The Court issue an order directing the Commissioner for Patents of the United States Patent and Trademark Office to invalidate U.S. Patent No. 10,078,431;

b)   The Court issue an order directing the Commissioner for Patents of the United States Patent and Trademark Office to invalidate U.S. Patent No. 9,940,008;

c)   The Court issue an order directing the Commissioner for Patents of the United States Patent and Trademark Office to invalidate U.S. Patent No. 10,534,521;

d)   The Court issue an order directing the Commissioner for Patents of the United States Patent and Trademark Office to invalidate U.S. Patent No. 10,129,345;

e)   The Court issue an order directing the Commissioner for Patents of the United States Patent and Trademark Office to invalidate U.S. Patent No. 10,157,412; and

f)   The Court issue an order directing the Commissioner for Patents of the United States Patent and Trademark Office to invalidate U.S. Patent No. 10,122,671;

152.    Compensatory and restitutionary damages in an amount to be proven at trial;

153.    The court issue an Order directing Defendants to pay to Plaintiff Nextdoor's profits and stock value gains associated with Nextdoor's unjust acts claimed herein;

154.    Compensatory damages in an amount to be proven at trial;

155.    Judgment that Nextdoor compensates for the harm caused by Nextdoor's material Intentional Interference with Prospective Economic Relations with *Abhyanker v. Airbnb, Inc.* (3:20-cv-08248-JST) as pled here through the unauthorized  and substantial confidential information and key terms negotiated for confidentiality and restricted from disclosure under the Settlement Agreement ECF No. 480-5, Exhibit D, without redaction and interference with ongoing negotiations with Airbnb;

156.    Special compensatory damages in the form of proportionate stock valuation gains

1 | in Nextdoor for stock owned by Tolia since May 2014;

2 | 157.    The court issue an Order directing Defendant to pay to Plaintiff Nextdoor's profits

3 | and Tolia's commensurate founder stock associated with Nextdoor's breach of contract and

4 | intentional interference with prospective business advantage with Airbnb;

5 | 158.    Equitable percent ("x%") of outstanding Nextdoor, Inc. stock in view of the harm

6 | caused to Abhyanker or equivalent cash value thereof;

7 | 159.    The court issue an Order certifying there has been a material breach by Nextdoor,

8 | all confidentiality obligations on the part of Abhyanker pursuant to Section 17 have

9 | immediately lapsed pursuant to Paragraph 19 as of March 2, 2021;

10 | 160.    The court issue an Order certifying all intellectual property licenses, releases and

11 | any covenants not to sue by Abhyanker have immediately lapsed given the material breach as of

12 | March 2, 2021;

13 | 161.    That this Court declare this an exceptional case and award Plaintiff reasonable

14 | attorneys' fees and costs in accordance with 35 U.S.C. §285;

15 | 162.    Punitive and exemplary damages based on Defendants' intentional, malicious,

16 | cruel and unjust disregard of Abhyanker's rights and interests; and

17 | 163.    That Plaintiff be granted such other and further relief as the Court may deem just

18 | and proper under the circumstances.

19 | **DEMAND FOR JURY TRIAL**

20 | Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury or

21 | any issues so triable by right.

22 |

23 | Dated: March 3, 2021                          LEGALFORCE RAPC WORLDWIDE P.C.

24 |

25 |                                              ___/s/ Raj Abhyanker_____

26 |                                              Raj V. Abhyanker

27 |                                              *Plaintiff*

28 |